## STATE v. SYPHRETT.

1. In prosecutions for libel it is the duty of the trial judge to declare to the jury the law applicable thereto, and if he errs in so doing, such errors may be reviewed on appeal to this court. The constitutional provision that "in all indictments for libel, the jury shall be the judges of the law and the facts," does not prevent the presiding judge from instructing the jury as to the law, nor this court from entertaining an appeal from a conviction.
2. Where an indictment upon its face is sufficient to sustain the charge there made, but insufficient to support the offence as disclosed by the evidence, judgment cannot be arrested, even though the evidence fails to sustain the charge as made.
3. Is it necessary that an indictment for libel upon a private individual, where the libel has been published, should contain an allegation of intent to provoke a breach of the peace? But if not published, except to the person libelled, such an allegation is necessary.
4. Where the defendant sent a libellous letter, sealed, to the prosecutor, who, not being able to read, got his wife to read it to him, there was no publication of the libel by the defendant—it not being shown that the defendant knew that the prosecutor could not read.

Before KERSHAW, J., Orangeburg, September, 1886.

The opinion fully states the case.

*Messrs. Izlar & Glaze*, for appellant.

*Mr. Jervey, solicitor,* contra.

June 23, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The appellant having been convicted of libel, appeals to this court upon the several grounds set out in the record, which will hereinafter be more particularly stated. The alleged libel was in the form of a letter from the defendant to the prosecutor, containing a charge of larceny. It was sealed when delivered to the prosecutor, and the only evidence tending to prove a publication was that the prosecutor, not being able to read, asked his wife to read it to him, and several days afterwards that prosecutor, in the presence of others, asked the defendant if he had written such a letter, and he admitted that he had.

There was no allegation or evidence that defendant knew that prosecutor was unable to read, and the indictment contained no allegation that the defendant sent the letter to the prosecutor with the intent to provoke a breach of the peace.

Judge Kershaw, in his charge to the jury, while fully recognizing the right of the jury, under an indictment for libel, to be the judges of the law as well as the facts, said that he did not think that this relieved him from the duty of giving to the jury his views of the law of libel. After defining the offence charged, and explaining to the jury the several questions which they would be called upon to determine as to the question of publication, he charged the jury substantially as follows : That while it was true, as claimed by the counsel for defendant, that to write a libellous letter, seal it up and send it to the party libelled, would not constitute the offence charged, unless the indictment contained an allegation that the letter was sent with the intent to provoke a breach of the peace, yet as there was evidence in this case tending to show that the letter was addressed to a person who could not read, and who could not therefore know the contents of the letter without calling in the aid of some one else, if the jury believed that the letter was given to the wife by the prosecutor to be read, because of the necessity arising from his being unable to read, that would be such a publication as would dispense with the necessity for the allegation in the indictment that the letter was sent with the intent to provoke a breach of the peace.

The defendant's motion in arrest of judgment having been overruled and sentence passed, the defendant appeals upon the following grounds :

I. "Because his honor erred in overruling the motion of the defendant in arrest of judgment, made on the following grounds: (1) Because the proof being that the letter was delivered sealed to the prosecutor, the person libelled, the indictment is defective on its face, there being no averment therein that the defendant intended thereby to provoke and incite the prosecutor to a breach of the peace. (2) Because the proof of publication was insufficient to sustain the averments of the indictment, which alleged a publication generally, and not a publication with intent to provoke and excite the prosecutor to a breach of the peace. (3)

Because the proof being that the letter was delivered sealed to the prosecutor, and by him taken to his house and there read to him by his wife at his request, he being unable to read, a fact not proved to have been known by the defendant, was not such a publication, no other person being present, as is sufficient to support the indictment herein or to sustain a conviction thereunder. Such publication must be alleged to have been sent with intent to provoke the prosecutor to a breach of the peace.

II. "Because his honor erred in charging the jury as to the law of libel, the jury being the judges of both 'the law and the facts,' under article I., section 8, of the Constitution of this State.

III. "Because his honor erred in holding that, under the evidence in this case, the indictment was good, notwithstanding it did not contain the averment that the defendant intended by sending the libel to the prosecutor to provoke and incite him to a breach of the peace.

IV. "Because his honor erred in charging the jury that, notwithstanding the letter was delivered sealed to the prosecutor, and was only read to him by his wife at his request, no other person being present, he being unable to read, that this was a sufficient publication thereof to sustain the averments of the indictment and a conviction thereunder.

V. "Because his honor erred in holding that, under the evidence in this case, there was a sufficient publication of the libel to sustain the averments in the indictment, there being no evidence to show that the defendant knew, at the time the letter was delivered to the prosecutor, that he could not read.

VI. "Because his honor erred in not leaving it entirely to the jury (the jury being the judges of the law and the facts) to say whether the defendant intended to injure the reputation of the prosecutor with the world at large who knew nothing of the libel, the publication being confined to the prosecutor and his wife."

Before proceeding to a consideration of the several points made by the grounds of appeal it will be necessary, first, to dispose of a preliminary objection raised by the solicitor as to the jurisdiction of this court to hear and decide this appeal. This objection is based upon a provision in section 8, article I., of the Constitution, declaring that "in all indictments for libel, the jury

shall be the judges of the law and the facts." By this provision, the solicitor contends—to use his own language—"the jury was put beyond the direction and control, although entitled to the advice, of the court. It was equivalent to repealing and wiping out all general and uniform law in this State as to libel. There is now a special law for each case, and each jury enacts that law. What writings are libellous; what is sufficient publication; what intent or motive must be shown to constitute the offence, are all as much questions for the jury, and *exclusively* for the jury, as are the facts of the case, and there can therefore be no appeal from their finding."

If such a construction can be properly placed upon this provision of the constitution, then, indeed, it furnishes a sad commentary on the utter insufficiency of human language to express the intentions of those who used it; nay more, of its capacity to be perverted by construction so as to effect precisely the opposite result from that which was intended. The slightest examination of the history of the controversy which led to the adoption of this or similar provisions will show that the sole purpose was to preserve the liberty of the press by protecting those charged with the abuse of such liberty, in the publication of alleged libels, from arbitrary power. Such being the object, it might be quite as dangerous to the liberty of the citizen to subject him to the arbitrary power of the jury as it would have been to leave him to the arbitrary power of the court. Indeed, it would be difficult to conceive of a more odious system of judicature than that by which a man would be tried by a law of which he was not merely ignorant, but of which he could not possibly inform himself, inasmuch as it would be locked up in the breasts of his triers until the verdict was rendered.

We cannot, therefore, assent to the proposition that the effect of the provision of the constitution under consideration "was equivalent to repealing and wiping out all general and uniform law in this State as to libel," and that "there is now a special law for each case, and each jury enacts that law." The only authority cited in support of such a proposition is an unsupported dictum of Willard, J., in *State* v. *Bailey* (1 *S. C. Rep.*, at page 6), where he says that the object of such a constitutional provision

is "to commit the rights of parties to the dictates of natural law that resides in the breast of the citizen rather than to the deductions of formal and scientific law as administered by the courts." Such a view cannot command our assent. On the contrary, we agree with that eminent author, Dr. Wharton, who concludes an interesting discussion of the right of a jury to determine the law, with this striking and appropriate language: "Subject to the qualification that all acquittals are final, the law in criminal cases is to be determined by the court. In this way we have our liberties and rights determined, not by an irresponsible, but by a responsible tribunal; not by a tribunal ignorant of the law, but by a tribunal trained to and disciplined by the law; not by an irreversible, but by a reversible tribunal; not by a tribunal which makes its own law, but by a tribunal that obeys the law as made. In this way we maintain two fundamental maxims. The first is, that while to facts answer juries, to the law answers the court. The second, which is still more important, is, *Nullum crimen, nulla poena, sine lege.* Unless there be a violation of law pre announced, and this by a constant and responsible tribunal, there is no crime, and can be no punishment." 5 *South. Law Review*, 366, August–September, 1879.

It seems to us, therefore, that under a proper construction of the clause of the constitution now under consideration, the practical result is simply to secure to the jury, by the fundamental law, the right to render a general verdict under an indictment for libel, as in other cases; and this because such right had not only been questioned, but absolutely denied and refused by the courts in England. It was, therefore, quite natural that such right, deemed so important to the liberty of the citizen, should be placed beyond further question by an express provision of the organic law. Under this view all the protection designated to secure the liberty of the citizen is obtained, for after a general verdict of acquittal no new trial can be had (*State* v. *Gathers*, 15 *S. C.*, 370), and at the same time not only the anomaly, but the gross injustice, of trying a man by a special law enacted for his case by the jury who are called upon to try him, is avoided; and, on the contrary, he is tried by the established law of the

land, as declared by those entrusted with that duty, just as a person charged with any other offence.

From this it follows that it is not only the right, but the duty, of the presiding judge, upon the trial of indictments for libel, to declare to the jury the law applicable thereto, and if he errs in so doing, such errors may be reviewed on appeal, just as in any other case, unless the defendant is acquitted, when, under a well settled principle of the common law, now incorporated in our constitution, "no person, after having once been acquitted by a jury, shall again for the same offence be put in jeopardy of his life or liberty." *Constitution*, article I., section 18.

We proceed, then, to inquire into the several grounds of appeal. And first as to the motion in arrest of judgment. Such a motion must be based upon some defect apparent upon the record, and cannot be sustained simply upon the ground of variance between the *allegata* and *probata*. This is fully shown by the cases cited in the solicitor's argument. *State* v. *Creight*, 1 *Brev.*, 169 ; 2 *A. D.*, 656 ; *State* v. *Heyward*, 2 *Nott & McC.*, 312 ; 10 *A. D.*, 604 ; *State* v. *Graham*, 15 *Rich.*, 310 ; *State* v. *Cockfield, Ibid.*, 316 ; *State* v. *Hamilton*, 17 *S. C.*, 462. It will be observed that the several grounds upon which the motion in arrest of judgment is based, all rest upon the allegation that the evidence was insufficient to sustain the charge as laid in the indictment, and not upon any defect in the indictment itself. They all assume that the charge as laid would have been unexceptionable, provided the evidence had been of a different character. In other words, they impliedly admit that an indictment for libel upon a private individual need not necessarily contain an allegation of the intent to provoke a breach of the peace, but that such an allegation and such proof is only necessary where there is no publication except to the person libelled ; and inasmuch as there was no evidence in this case (as was contended by the appellant) of any publication by the defendant to any person except the prosecutor—the person alleged to have been libelled—the indictment upon which the defendant has been convicted was insufficient, and the judgment should, therefore, be arrested.

This, however, is more an objection to the sufficiency of the evidence than to the sufficiency of the indictment. It is like the

case of the *State* v. *Graham, supra,* where, under an indictment
for obstructing a public landing, and the proof being that the
public road leading to the landing was obstructed at a point about
one hundred yards from the landing, it was held that this consti-
tuted no ground for a motion in arrest of judgment, but was a
good ground for a new trial.    Or like the case of the *State* v.
*Cockfield, supra,* where the indictment was for stealing a plough,
and the evidence was that the article stolen was a ploughshare,
where a similar ruling was made.    Or like the case of the *State*
v. *Hamilton, supra,* where the indictment charged the goods
stolen to be the property of one person, when the proof showed
them to be the property of another; it was held that while this
might have furnished a good ground for a motion for a new trial,
it afforded no ground for a motion in arrest of judgment.    It will
be observed that in all three of these cases the indictments were
unexceptionable, and might have been sustained under a certain
state of the evidence.    And so here, under the assumption above
alluded to, the indictment, under certain proof, could have been
sustained, and hence there is no ground for arrest of judgment.

These remarks are based upon the assumption that an indict-
ment for a libel upon a private individual, which has been pub-
lished abroad—to other persons than the one libelled—need not
contain an allegation of any intent to provoke a breach of the
peace, though we are inclined to think that this assumption,
which we must admit seems to be supported by authority, is
not well founded in reason.    For when it is remembered that
one of the essential elements in a libel of a private individual
is its tendency to provoke a breach of the peace, and that
the criminal law takes cognizance of it solely for that rea-
son, and not for the purpose of protecting the good name and
fame of private individuals (1 *Bish. Crim. Law,* §§ 591, 734; 2
*Ibid.,* § 909), it would seem to follow logically that every indict-
ment for a libel upon a private individual should contain an alle-
gation of this essential element of the offence.    But this is a
question not made or argued in this case, and we do not propose
to decide anything as to it.

The only contention on the part of the appellant is, that where
there has been no publication abroad, as it is termed—that is, to

the public generally—or to persons other than the one alleged to have been libelled, then it is necessary that the indictment should contain an allegation that the libel was sent to the party libelled with intent to provoke a breach of the peace. This position seems to be well supported by authority. In 3 *Chitty on Criminal Law*, 871, it is said : "Though there be no publication, yet the sending a letter to the party himself, filled with abusive language, is indictable, because it tends to provoke him to a breach of the peace in order to revenge the insult he has received ; but then if there be no publication to a third person, the indictment must allege an intention to provoke the prosecutor to a breach of the peace," citing *Rex* v. *Wegener*, 2 *Stark.*, 245, which seems to be a leading case on the subject. And again, at page 875, this eminent author says : "Where there has been no publication of the libel to the third person, or the publication cannot be proved, and the libel has been sent to the prosecutor himself, it is necessary that the indictment should state that the paper was written or sent to the party libelled with the intent to provoke him to a breach of the peace." And in the form, given at page 889, for an indictment for writing and sending a letter to the prosecutor, accusing him of theft (precisely this case), we find the allegation of the intent to provoke the prosecutor to a breach of the peace.

It would seem, therefore, to be settled that where there has been no publication except to the person libelled, the indictment must contain an allegation that the libel was written or sent with intent to provoke a breach of the peace; and so the Circuit Judge instructed the jury in this case, but he added that if the letter was given to the wife by the prosecutor to be read by her, from the necessity arising from the prosecutor's being unable to read, simply with a view to inform himself of the contents of the letter, that would be a sufficient publication of the libel to a third person by the defendant to warrant his conviction under this indictment. This instruction on the part of the Circuit Judge as to the publication was excepted to by the defendant, and constitutes one of his grounds of appeal. In *Fonville* v. *McNease* (*Dud.*, 303), the testimony showed that the alleged libel was in the form of a letter, sealed and addressed to the prosecutor or Miss Susan Sloan, which was dropped in an enclosure near

plaintiff's house; that it came into the possession of the plaintiff with the seal unbroken, and that he opened it and read it aloud to his family and others. It also appeared, just as in this case, that the plaintiff, in a public place, in the presence of others, mentioned the fact of having received such a letter, stating the contents, and that defendant avowed himself the author of the letter. Upon a motion for non-suit the court held that there was no *prima facie* evidence of publication *by the defendant*, and granted the motion.

It will be observed that the present case is identical with that just cited, except that there the plaintiff published the letter himself by reading it to the witness and his family, while here it was read by the wife of the prosecutor, *at his request*, because of his inability to read. There the court said that the publication was the act of the plaintiff, and not of the defendant, and it seems to us that the same remark may be made here. True, here the prosecutor did not read the letter himself, but it was read by his request, and it was, therefore, as much his act as if he had himself read it. He, and not the defendant, caused the publication to be made. The fact that the prosecutor was unable to read, and must therefore necessarily call in the aid of some third person, in the absence of any testimony tending to show that the defendant knew of the prosecutor's inability to read, cannot affect the question. In this respect this case differs materially from the case of *Delacroix* v. *Thevenot*, 2 *Stark.*, 63. There the defendant knew that the plaintiff's clerk was in the habit of opening and reading his letters, and hence when the defendant sent the libellous letter to the plaintiff, which was opened and read by the clerk, it was held to be sufficient proof of publication by the defendant, upon the well settled principle that a man is presumed to intend the natural and probable consequences of his acts. That case, as O'Neall, J., says in *Fonville* v. *McNease*, constitutes an exception to the rule that sending a sealed letter, containing libellous matter, to the party himself, is no evidence of publication, and the exception rests upon the knowledge of such facts as would induce a person to believe that the contents of the letter would reach a third person.

But without such knowledge there is no foundation for the exception.

It seems to us, therefore, that in the absence of any evidence whatever tending to show that the defendant knew of prosecutor's inability to read, it was error to instruct the jury that the giving of the letter by the prosecutor to his wife to read because of his inability to do so, was such a publication as would render the defendant responsible under this indictment. It may be that the defendant, if he had known that the prosecutor could not read, and would therefore be compelled to call to his aid some third person in order to acquaint himself with the contents of the letter, would not have sent it. At all events, we do not think he can be held responsible for an act which he did not do, and which there is no reason to suppose he intended should be done ; for one can scarcely be said to have intended the consequences of an act, when he had no knowledge of such facts as would necessarily, or even probably, lead to such consequences. The very fact that he employed a *sealed* letter as the vehicle of his charges against the prosecutor would seem to indicate that they were intended for his eye alone, and not for that of the public, as otherwise he might have used much more effectual means to effect his end.

It is quite true, as said by O'Neall, J., in *Fonville* v. *Mc-Nease*, that there is a great distinction in respect to publication between an indictment and a civil action for libel, the object of the former being to prevent a breach of the peace, and hence a publication to the party himself is sufficient, while the object of the latter is to repair the damage done to a man's reputation, and hence a publication to third persons is necessary ; yet inasmuch as we have seen that this indictment, failing to contain any allegation of an intent to provoke a breach of the peace, can only be sustained by proof of publication to third persons, it becomes essential to inquire into the sufficiency of such publication, and hence the case of *Fonville* v. *McNease*, though a civil action, becomes authority in this case. It seems to us that the Circuit Judge erred in his instructions to the jury as to what would be a sufficient publication of the alleged libel, *under this indictment*, and that upon this ground the case must go back.

The judgment of this court is, that the judgment of the Cir-

cuit Court be reversed, and that the case be remanded to that court for a new trial.