### WARNOCK *v.* MITCHELL.

#### (*Circuit Court, W. D. Tennessee.* August 26, 1890.)

CRIMINAL LIBEL—ACTION FOR DAMAGES—SENDING LETTER.
  The Tennessee Code (Mill & V. § 5552) has not changed the common law that while the sending of a sealed letter which is libelous to the plaintiff, without any other act on the part of the defendant towards making its contents known to a third person, is punishable criminally, it is not a publication sufficient to support a civil action for defamation.

· At Law. On demurrer to the declaration.
*Taylor & Carroll*, for plaintiff.
*Sterling Pierson*, for defendant.

· HAMMOND, J. The two counts of this declaration, to which the demurrer has been limited by the· submission in argument, aver no other publication, either generally or specially, of the alleged libel, than the receipt by the plaintiff of the private letters in which the defamation was contained. It is conceded by the plaintiff's counsel that this is not a sufficient publication, unless the rule of the common law has been changed by the statute. It will aid us in determining the disputed scope of the statute to consider somewhat the rule of the common law on the subject. The counsel for the defendant has stated correctly, as we find, the reason why the mere delivery of a private letter to the plaintiff is not, in a civil action, a publication of the libel, and yet, in a criminal indictment, amounts to a publication. In the civil action, the law in theory allows no compensation for wounded feelings alone, but ,only when that injury is accompanied with an impairment of one's reputation. with others; as, in other cases of tort, where there must be some damage to the person or, property, which may be aggravated by the mental suffering attending the injury. But when the public. undertakes to

redress its own wrong in the premises by the criminal proceeding, it punishes not so much for the defamation of the prosecutor as for the somewhat distinct offense of inciting, by the defamation, to a breach of the peace. Perhaps, in strict thought, it may be that it is a misnomer to call the criminal proceeding a prosecution for libel at all, for all authorities are agreed that the indictment or information must allege an intention to break the peace by incitement thereto. Yet it will be found perhaps that, after all, the distinction comes of an extreme solicitude to punish the culprit for mere *private* defamation,—a solicitude which is not so intense when the public itself becomes, by its indulgence in the liberties of free speech, a sharer in the offense of open defamation, and through its public press, and other organs of public opinion, delights to degrade a man by libel and slander because of his social, religious, or political sins, in their sight, or for the mere barbaric enjoyment of the sensation of seeing a good reputation destroyed, the destroyers hypocritically professing sympathy with the victim meanwhile. Most of the legislation on the subject of libel has been, therefore, in aid of the public freedom in this behalf; but when it does touch upon the seemingly less venial offense of mere private defamation, it is in the other direction of more severe laws for its suppression. It might be well enough urged, therefore, that the legislature intended by any given statute to enlarge the civil remedy by placing it upon an equality with the criminal proceeding in the matter of publication, and that which it takes to constitute it; for all the cases show that the courts are very astute to lay hold of any circumstance appearing in the case to sustain publication in aid of the civil action in regard to mere private transactions, and in the criminal proceeding do not require it at all. Nevertheless, quite reluctantly, I conclude that the Tennessee legislature had not any intention to enlarge the civil remedy in the statute we have before us.

In the leading case of *Sir Baptist Hicks*, Hob. 215, Poph. 139, as stated by the last-cited reporter, the reasons for the rule of the criminal law are somewhat diversely given by the judges; none of them saying, however, that it was because of a provocation to a breach of the peace, as reported by Hobart, and generally accepted by subsequent cases. One of them said that such a letter as was written in that case concerned public matter, and was an offense against piety, charity, and justice, because Sir Baptist's benefactions, which were derided, were given to a church, to a hospital, and to a public building, and the giving of such gifts should not be discouraged, even by private derision. Another said that if the defamatory letter had related to only private concerns, and did not thus affect the public interest, it could not have been punished. Lord Coke curtly said only that he had been instructed as attorney to file an information in such a case, which, however, was not filed, for reasons stated by him, and that it was resolved in *Edwards* v. *Wooton*, 12 Coke, 35, to that effect. But Lord Chancellor Bacon said "that the reason why such a private letter shall be punished is because it in a manner enforceth the party to whom the letter is directed to publish it to his friends to have their advice, and for fear that the other party would publish it, so that

this compulsory publication shall be deemed a publication in the delinquent." This reason, it is apparent, applies to make the sending of the letter a publication in the civil action as well as in the criminal prosecution, but it did not seem to take root in the subsequent cases, and they follow the statement in *Edwards* v. *Wooton, supra*, that "for the writing of a private letter to another, without any other publication, the party to whom it is directed cannot have an action upon the case, for this: that no action lies; but that the said infamous letter, which in law is a libel, shall be punished, although it was solely written to the plaintiff without any other publication, for it is an offense to the king, and is a great motive to revenge, and tends to the breaking of the peace and great mischief; and for that reason it was necessary that it should be punished by indictment to prevent such occasions of mischief." And so one of the very latest cases examined repudiates Lord Chancellor BACON's reasoning in a case where the addressee of the letter was illiterate, and had his wife read it to him, which was held not to be a publication by the defendant. *State* v. *Syphrett*, 27 S. C. 29, 37, 2 S. E. Rep. 624. All the authorities seem to support this distinction quite uniformly, and to require in the civil action a publication to some third person, though very slight circumstances will be taken to be a publication in support of the suit. *Queen* v. *Adams*, 22 Q. B. Div. 66; *Wennhak* v. *Morgan*, 20 Q. B. Div. 635, —where it is said: "The uttering of a libel to the party libeled is clearly no publication for the purposes of a civil action." *Phillips* v. *Jansen*, 2 Esp. 624; *Barrow* v. *Lewellin*, Hob. 62, and note; *Darcy* v. *Markham*, Id. 120a; *Wenman* v. *Ash*, 13 C. B. 836; *Lyle* v. *Clason*, 1 Caines, 581, and note; *Broderick* v. *James*, 3 Daly, 481; *McIntosh* v. *Matherly*, 9 B. Mon. 119; *Sheffill* v. *Van Deusen*, 13 Gray, 304; *Spaits* v. *Poundstone*, 87 Ind. 522; *Mielenz* v. *Quasdorf*, 68 Iowa, 726, 28 N. W. Rep. 41; Add. Torts, 980; Cooley, Torts, 193; Gilb. Ev. 641; Townsh. Sland. & Lib. § 93; 2 Starkie, Sland. & Lib. 13; Odgers, Sland. & Lib. 150, 383; *Sesler* v. *Montgomery*, 28 Amer. Law Reg. 276, and note, 413, note. Notwithstanding a seemingly uniform support of this distinction between the civil and the criminal action in the matter of treating the uttering of the libelous or slanderous writing or words to the plaintiff himself only as a publication, so accurate an author as the annotator of Saunders' Reports, in his note to *Lake* v. *King*, 1 Wms. Saund. 132, states the law to the contrary, and says that the sending of a sealed letter to the party himself only is in a civil action a publication, although it had been formerly held otherwise; for which he cites *Baldwin* v. *Elphinston*, 2 W. Bl. 1037, and *Weatherston* v. *Hawkins*, 1 Term R. 110; and another learned annotator adopts this statement in his note to *Phillips* v. *Jansen*, 2 Esp. 624, (Day's Ed. 1808;) but still another annotator of the leading case of *Lyle* v. *Clason*, 1 Caines, 581, with becoming deference, of course, points out that the two cases cited by Sergeant Williams do not sustain his note, as they certainly do not. He probably mistook the statement of Wood, counsel for the plaintiff in *Weatherston* v. *Hawkins, supra*,—that, "as to publication, it never has been doubted but that the mere writing of a letter is a sufficient publication, even though it be written to the party himself,"—for an opinion

of the court. Certainly the court did not decide that proposition, although Lord MANSFIELD does say that "the general rules are laid down as Mr. Wood has stated;" for the letter in that case was not addressed to the plaintiff at all, but to a third person, one Collier. Also, Bacon's Abridgment, tit. "Libel," B, states that "it seems to be a matter of doubt whether the sending an abusive letter, filled with provoking language, to another, will be an action as for a libel, because here is no publication." But the cases indicate that perhaps this doubt, and the statement of Mr. Wood above referred to, are confused with that other doubt which was mooted in the famous case of *King* v. *Burdett*, 3 Barn. & Ald. 717, 4 Barn. & Ald. 95, 314, and not decided, whether, namely, the mere writing of a libel, without more, is not in the criminal law an indictable offense. 2 Starkie, Sland. & L. 229.

It will be found, so far as I am advised, that the law of libel, both civil and criminal, stands in Tennessee substantially as at common law. In 1805, following the lead of some of the other states, we passed an act placing the criminal prosecution upon an equality with the civil action in the matter of permitting the truth of the defamatory words to be shown in defense of the indictment, but with that exception our legislation has been remarkably free from any interference with the common law of libel or slander. Act 1805, c. 6, Caruth. & N. St. p. 439. When we came to make the Code of 1858, the commissioners charged with that duty added to the legislation four sections, or, more accurately, three sections, the other being the mere repetition of a constitutional requirement that the jury should be judges of both the law and the facts, in all prosecutions for libel. Const. art. 1, § 19; Thomp. & S. Code Tenn. § 4764. The first of these sections defines "a libel" in language which might be applicable to either the criminal or the civil offense, and the next extends the definition to include the defamation of the memory of the dead. Id. §§ 4760, 4761. Then comes the section which is brought into the dispute in this case, defining "publication;" and the next section is the act of 1805, before referred to, relating to the truth of the matter charged in the indictment as a defense. Id. §§ 4762, 4763; Mill. & V. Code, §§ 5550–5554. The section here in dispute concerning the "publication" of the libel is as follows:

"4762. No printing, writing, or other thing is a libel without publication; but the delivery, selling, reading, or otherwise communicating a libel, or causing the same to be delivered, sold, read, or otherwise communicated, to one or more persons, or to the party libeled, is a publication thereof." Mill. & V. Code, § 5552.

Were it not for the circumstances to be presently mentioned, I should be inclined to construe this general language (also that of the two preceding sections defining "libel") as applicable to both the civil and the criminal remedy; for, after all, the reason for denying the civil remedy, when the defamatory words have been spoken or delivered only to the plaintiff, is technical, and highly artificial, as plausible as it appears to be. No injury in fact to the victim's reputation is really required to support the civil action, but only in theory, since the action lies, although

the third person hearing the words does not believe them to be true, or knows them to be false; it being sufficient if from their nature they are calculated to do him the injury, (*Hubbard* v. *Rutledge*, 52 Miss. 581; *Markham* v. *Russell*, 12 Allen, 573; *Marble* v. *Chapin*, 132 Mass. 225;) just as in other torts the slightest physical pain, or none at all, if the blow be given in fact, or other trespass be actually committed, will support the action for damages. Wherefore it would seem not unreasonable for the legislature to place the civil remedy on an equality in this regard with the criminal offense, and make the mere sending of the letter to the plaintiff alone a publication, thereby making unnecessary all that judicial astuteness we find in the cases which lay hold of almost any circumstance beyond the plaintiff to constitute the required "publication." But, prior to these superadded sections of the Code, the decisions in Tennessee had held closely to the common law, both as to civil remedy and as to the criminal prosecution; there being substantially no other law on the subject. In *Swindle* v. *State*, 2 Yerg. 581, placing the letter sealed under the bed of a third person, who was likely to open it, although addressed only to the plaintiff, was held a publication within the purview of the criminal law of libel. It was a publication in fact. The court quotes Gilbert approvingly, and the case is instructive as to our local law on this subject. In *Hodges* v. *State*, 5 Humph. 112, the court seems, *obiter*, to decide that the receipt by the plaintiff of the letter through the mail was not a publication, and, as that was a criminal case, it might inferentially appear that the court decided that, even in a criminal case, the delivery to the plaintiff only is not a publication; but clearly the court did not so decide, because the case failed only because the indictment was fatally defective in not averring an intention to provoke a breach of the peace. If that had been averred, the court would have sustained the conviction, and the law in Tennessee remains in harmony with the general law and the leading case in this country of *State* v. *Avery*, 7 Conn. 266, and the latest case of *Queen* v. *Adams*, *supra*, in England, and the others already mentioned.

Such being the state of our decisions and the general law, it seems difficult to determine why the makers of our Code felt it necessary to insert these merely declaratory sections in the criminal part of their Code, where they are comparatively useless, and while if applied to the civil action they would have meant something of importance, unless it may be that they wished to settle the other doubt before mentioned, whether or not the bare writing of libelous matter, without more, is punishable criminally. Possibly this section was intended to settle that it should not be, however the point may be ruled at common law or elsewhere. However this may be, these sections are not found, as they should be if applicable to the whole body of our law, in that chapter of the Code containing general definitions, (Thomp. & S. Code, §§ 40–59; Mill. & V. Code, §§ 41–57,) but only in the chapter on "Crimes," and in the regular catalogue of crimes under the title of "Libel;" and, general as the language is, since the legislature was not treating of the civil remedy in that place, and no express words are used, nor fair inference

may be drawn, to show that they had in mind that branch of the law of libel, this section of the Code should be confined to the criminal prosecution, and we cannot extend it, as we are asked to do in this case, to the civil remedy.

Demurrer sustained.