74    745
75    148

74    745]
f80   241'

MELINDA V. LYON v. GOLDIE E. LASH.

No. 14,767.   (88 Pac. 262.)

SYLLABUS BY THE COURT.

LIBEL—*Defamatory Letter*—*Publication*. Where a person writes a defamatory letter and sends it in a sealed envelope, through the United States mail, to the person defamed thereby, who receives it and reads the contents thereof to a third person, such reading will not constitute a publication of the libel by the writer thereof for the purposes of a civil action.

Error from Sedgwick district court; THOMAS C. WILSON, judge.   Opinion filed December 8, 1906.   Affirmed.

*Adams & Adams*, for plaintiff in error.

*John D. Davis*, for defendant in error

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the district court of Sedgwick county for the purpose of recovering damages on account of an alleged libel. The defendant filed a general demurrer to the petition, which was sustained. The plaintiff stood upon her pleading, and judgment was entered against her for costs. To reverse the ruling she brings the case here for review. The libelous matter complained of is contained in a letter which reads:

"I write to tell you we got home the 2 day of march with the horses all safe and well. We was 12 days comeing from boise city up hear threw snow and mud part of the way the mud was hub deep to the wagon and snow the other part we came over seven feet of snow on the divide of the big mountain I told you about we have four feet of snow here on our ranch now we got our steer calf drowned while george was gone to boise to meet me everything els was all right the horses stood the trip all rite and air looking fine and now in regard to the land we think we will not undo what the dead has done in grandfather will he says this in so much as I never helped my son William I give to him the home farm and I no much as my father loved his mother if she had needed that land he would have

deeded it to her, why he loved his father and mother so well he deserted his wife and children to live near them, and if you had a showed me everything and not tried to keep some things hid as you did for instance the box of tools under the bed where I slept and the whip the fly nets and many other things that was my own property then you may talk to me about a parser and when you send me a draft on some bank for five thousand dollars you can have a deed to that land you kept everything hid from me that you could you never told me that your mother had released her dowery rite to that land did you I found that out after I came hear if you had told me everything I should have done something for you I want you to turn over to the probate court the money you got from charley herman for fathers cook stove and that vice and I want you to sell that lumber and shingles and corn you have of mine and every thing you have and turn the money over to the probate court and if you dont do this I shall take steps to compel you to do so I love my grandmother but have no love for you melinda and if my grandmother wants to come and live with me I will come after her but as for you you can hoe your own way if you cant make a living on that land you have got you can work in some ladies kitchen for your living as I have had to do and I want you to write and tell me what agreement you made with charley herman about the rent of that 80 ackers of land this year for that land belongs to me and if you do not tell me I will find out.

GOLDIE E. LASH."

The extrinsic circumstances explanatory of the language used in the letter, as nearly as they can be gathered from the allegations of the petition and the letter itself, are, substantially, that W. H. Lyon died, leaving an estate; Elmina Lyon is his widow, Melinda V. Lyon his daughter, and the defendant the daughter of his son William. The defendant believed that she was entitled to a part of her grandfather's estate, and that her aunt, the plaintiff, who was administratrix thereof, was trying to keep her from sharing in the property.

The plaintiff insists that the letter is libelous *per se,* and therefore does not allege special damages. The defendant contends: (1) That the language used in the

letter is not actionable *per se;* and (2) if it is, the publication thereof is not sufficiently alleged.

In the view we have taken, the case can be disposed of upon the defendant's last contention. We are clearly of the opinion that the petition does not sufficiently aver a publication. The facts alleged are that the defendant enclosed the letter in a sealed envelope and sent it through the mail, directed to the plaintiff. The plaintiff, after receiving the letter, opened it and read it to her mother, who was unable to read. The publication to the third person, therefore, was made by the plaintiff. We understand the rule to be well settled that a slander or libel is not published by the communication thereof to the defamed person alone. (Newell, Slander & Libel, 2d ed., 228; 18 A. & E. Encycl. of L. 1017; *Spaits v. Poundstone,* 87 Ind. 522, 44 Am. Rep. 773.)

Odgers, in the first American edition of his work on Libel and Slander, says (at *p. 150) :

"It is no publication when the words are only communicated to the person defamed; for that cannot injure his reputation. A man's reputation is the estimate in which others hold him; not the opinion which he has of himself. The attempt to diminish our friend's good opinion of himself, though possibly unpleasant to him, is yet generally ineffectual, and is certainly not actionable, unless some one else overhears." (See, also, *Warnock v. Mitchell,* 43 Fed. 428; *Fonville v. McNease,* Dudley Law [S. C.], 303, 31 Am. Dec. 556; *Sheffill & Wife v. Van Deusen & Wife,* 79 Mass. 304, 74 Am. Dec. 632.)

This rule is not questioned by any case to which our attention has been called.

We have examined all the cases that have been cited, and many others, and wherever sending a libel to the person defamed has been held to constitute a publication thereof the facts show that the communication to the third person was caused by the act or procurement of the libeler, as where the letter was sent to the person defamed with knowledge that because of his illiteracy

a third person would necessarily be called upon to read it, or where the letter was directed to the person defamed and another, so that such other might, and did, by reason of such direction, open and read the libel.

To bring this case within the category of the above illustrations, it was alleged that the defendant knew when she sent the letter to the plaintiff that it would be read to her grandmother, and used her name in the letter for that purpose. The fact remains, however, that the letter was sent directly to the plaintiff, who received it unopened; she held it in her possession and under her control. The question of publication or suppression was a question for her to decide; she voluntarily disclosed the contents to her mother. She, and not the defendant, accomplished the publication, and the defendant is not responsible therefor.

The judgment of the district court is affirmed.

All the Justices concurring.