ALBERT F. FRYE, Appellant, v. WILLIAM C. WARREN, MARY WARREN and THOMAS F. COYNE, Respondents.

Springfield Court of Appeals, May 19, 1915.

CONSPIRACY: Petition: Not Sufficient When: Commission by Broker. Action by broker for specific performance of contract for sale of certain real estate. Petition examined and *held* not to state a cause of action, as against a demurrer, for a money judgment on account of conspiracy between defendants, the owner of the real estate and the purchaser procured by the broker.

Appeal from Newton County Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*Albert Frye* and *George Hubbert* for appellant.

*Horace Ruark* for respondents William and Mary Warren.

*Frank L. Farlow* for respondent, Thomas F. Coyne.

FARRINGTON, J.—The plaintiff (appellant) filed a petition in the circuit court of Newton county seeking specific performance of a contract for the sale of real estate alleged to have been entered into between William C. Warren and his wife Mary Warren on the one side and Thomas F. Coyne on the other, Coyne being the alleged prospective buyer. The theory of his cause of action is, as shown by his petition, that plaintiff acquired an interest in the transaction by reason of his having negotiated a sale of the real estate; that is, he claimed a two thousand dollar interest, that

being the difference between the price at which the Warrens agreed to sell and the price Coyne agreed to pay. Plaintiff was a real estate agent and averred that he had authority to sell the real estate belonging to the Warrens for any amount that would net them five thousand dollars.

General demurrers were filed by the Warrens and by Coyne which were sustained by the trial court. The plaintiff refused to plead further and appealed from that action of the trial court to the Supreme Court.

The petition is a lengthy one, but enough of it is set forth in the opinion rendered by the Supreme Court on March 2, 1915 (Frye v. Warren et al., 264 Mo. 281, 174 S. W. 391), to show the theory on which plaintiff seeks to recover. The Supreme Court held that plaintiff did not state a cause of action entitling him to the relief of specific performance and that the amount involved is less than that required to give the Supreme Court jurisdiction of the appeal. The petition including the prayer, and the taking of an appeal to the Supreme Court when two thousand dollars is the maximum amount of judgment that could be rendered, show that plaintiff attempted to state facts that would entitle him to the equitable relief of specific performance and that the plaintiff did not attempt to state a cause of action sounding in tort seeking damages on account of an unlawful conspiracy. It is said in Humphreys v. Atlantic Milling Co., 98 Mo. l. c. 553, 10 S. W. 140: "Our conclusion is that under our practice act, the plea of remedy at law in a suit in equity is unknown. It has no place under our system of pleading." In Rush v. Brown, 101 Mo. l. c. 592, 14 S. W. 735, appears the following: "Parties who wish to change or enlarge their demand for relief should do so by amendment or otherwise while the cause is before the trial court, at least in those instances where the case goes off upon demurrer, for the general provision permitting the

court to grant 'any relief consistent with the case made by the plaintiff and embraced within the issues,' . . . can have no proper application where final judgment for defendant has been reached on demurrer. In that event the prayer for general relief, supplemental to one for specific performance, cannot, in view of section 2039 (Revised Statutes, 1889), be construed as a prayer for a money judgment.'' [See, also: Vogelsong v. Wood Fibre Plaster Co., 147 Mo. App. l. c. 587, 126 S. W. 804; Bick v. Dixon, 148 Mo. App. 703, 129 S. W. 254; Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. l. c. 715, 111 S. W. 480; Mulholland v. Rapp, 50 Mo. 42.] In Meyers v. Field, 37 Mo. l. c. 440, 441, it is said: ''Where matters of equitable jurisdiction are mixed and blended with matters of legal cognizance in the same count, the court will not undertake narrowly to sift the petition in order to see if the essential elements of a cause of action at law can, by any construction, be made out and separated from the rest. Such a petition may very well be held to be demurrable for that reason alone, as not containing a cause of action stated with that degree of certainty which the law requires.'' [See, also, Peyton v. Rose, 41 Mo. l. c. 262.] In Pemberton v. Johnson, 46 Mo. l. c. 344, appears the following language: ''Had the present plaintiff obtained the judgment to which the facts entitled him, we might, perhaps, by rejecting parts of his petition, find enough left to sustain the equitable relief given him. In that case his judgment should stand. But having obtained none, and his equitable rights not being concluded by the nonsuit he suffered, it is better that he commence again and present his real case, unencumbered and without ambiguity.''

Under the law as declared in the foregoing cases, the judgment must be affirmed. *Sturgis, J.,* concurs, and files a separate opinion. *Robertson, P. J.,* not sitting.

## SEPARATE CONCURRING OPINION.

STURGIS, J.—In the case of Sidway v. Mo. Land & Live Stock Co., 163 Mo. 342, 372, 63 S. W. 705, the court said: "The *primary* duty to make the pleading clear and unequivocal is on the party who drafts it; he it is, who without motion or suggestion from his adversary, on whom rests the *onus* of making the pleading definite and certain, which burden cannot be cast on the adversary, by the fault of the pleader failing to perform his own duty. And notwithstanding our statute (section 629), requires pleadings to be *liberally* construed, etc., this only extends to the *form* of the pleadings, and does not apply to the fundamental requirements of a good pleading, and the pleader is not allowed now, any more than formerly, by inserting doubtful or uncertain allegations in a pleading, to throw upon his adversary the hazard of correctly interpreting its meaning." The petition in this case certainly does not conform to this requirement and abounds in statements of purely legal conclusions rather than of facts. I agree that the demurrer ought to be sustained on the grounds stated by FARRINGTON, J.

It seems to me, however, that the demurrer should have been sustained on another ground. The Supreme Court having held that plaintiff's petition does not state facts entitling him to a specific performance of the contract for sale by one and purchase by the other defendant of the land in question, whereby plaintiff would receive $2000 and defendant Warren $5000 of the contract price, that question is out of the case. We are now asked to hold that the petition states a cause of action for *damages* for the wrongful refusal of defendants, or some of them, to carry out the contract for sale and conveyance of the land. As the plaintiff states in his petition that without specific performance "plaintiff can have no adequate legal right or remedy against either of them (defendants) for the recovery

of the said $2000," this court cannot be blamed for placing the same interpretation on the petition as the plaintiff himself has done.

Let us look, however, at another phase of the case, particularly with reference to the liability of defendant Coyne. The case is here on briefs only and we must also, as stated by the Supreme Court, analyze the petition and interpret plaintiff's contention as best we can without the aid of oral argument. As we understand plaintiff, he contends that it is not material whether his cause of action be in tort, for violation or inducing another to violate a contract of sale, or *ex contractu*, based on the contract of defendant Warren to pay him a commission; that all that plaintiff is required to do is to state the facts and the rest is for the court. There is certainly nothing of an equitable nature left in the case unless the court can make the damages assessed, either *ex contractu* or *ex delicto*, a lien on the land as is prayed for. We find nothing, however, in the briefs or petition suggesting how or why this should be done. Certainly any judgment for damages against defendant Coyne, based on his refusal, or his wrongful participation in Warren's refusal, to carry out this contract to purchase, cannot be made a lien on *Warren's* land.

Can defendant Coyne be held liable on any theory of the case? I think not. There is no contractual relation disclosed between Coyne and plaintiff. He must be held, if at all, for refusal to carry out the contract of purchase or for wrongfully participating in Warren's refusal to carry out such contract. There are cases holding that, where a person wrongfully refuses to carry out his contract or induces another to do so whereby plaintiff suffers a loss, he has an action against the wrongdoer; but I do not think that principle can be applied here. Plaintiff's petition is certainly bottomed on the theory that defendants Coyne and Warren made a valid contract of sale of this land—

Frye v. Warren.

one that afforded to either a remedy for specific performance or damages against the other for a refusal to perform. The petition alleges: "That the defendants, for the wrongful purpose and with the fraudulent intent to deprive plaintiff of his said contracted commission and compensation, *have taken the wrongful stand that they are under no obligation to, and they will not, further perform said contract or consummate said sale or conveyance* to any extent, without which plaintiff can have no adequate legal right or remedy against either of them for the recovery of the said $2000." And it ends with the prayer for decree "that the said defendants shall, in all things, and fully, perform specifically the said contract of sale and conveyance upon the one hand and the purchase agreement upon the other hand." The law is well settled that when the broker has procured a purchaser financially able to buy and who is willing to do so to the extent that he enters into a valid written agreement to purchase on the terms offered and accepted, then the agent has earned his commission and can sue for and recover the same from his principal, the vendor, regardless of whether such purchaser refuses to carry out the contract or not. When the agent has put it in the power of the vendor to maintain a suit for specific performance or for damages against the purchaser, then it is up to him to do so and he cannot refuse to pay the agent's commission because of the purchaser's refusal to comply with his contract. [Goldsberry v. Eades, 161 Mo. App. 8, 142 S. W. 1080; Goldsberry v. Thomas, 178 Mo. App. 334, 165 S. W. 1179; Love v. Owens, 31 Mo. App. 501; Hayden v. Grillo, 35 Mo. App. 647; Lombard v. Sills, 170 Mo. App. 555, 157 S. W. 93; 19 Cyc. 270.] So far as plaintiff's rights are concerned it makes no difference whatever whether defendant Coyne, as purchaser, refused or not to consummate the sale and pay the purchase money after he had made an enforceable contract to do so. There is no claim

that he is insolvent, even if that is material after Warren had accepted him as a purchaser with his check for $1000 earnest money.

Of course, if Warren, the vendor, refused, with or without cause, to consummate the sale under such circumstances, he is liable on his contract to plaintiff for his commission. His refusal alone creates a cause of action in favor of the broker. [Sallee v. McMurry, 113 Mo. App. 253, 264, 88 S. W. 157; Herrick v. Woodson, 143 Mo. App. 258, 264, 127 S. W. 391; Brown v. Smith, 113 Mo. App. 59, 68, 70, 87 S. W. 556; Ennis v. Eager, 152 Mo. App. 493, 133 S. W. 850.] The fact that defendant Coyne also refused to carry out the contract could not affect Warren's liability. That is fixed by Warren's refusal. It would seem, therefore, that, the plaintiff, according to his petition, having procured a purchaser, Coyne, who is able to purchase and was accepted by Warren and who made a valid contract of sale affording a basis for specific performance, there is no reason shown why plaintiff did not bring suit in the ordinary way against Warren.

There is then no liability against Coyne, jointly with Warren or severally, because of his refusal to carry out his contract or for his aiding and inducing Warren to do so. As said in Bird v. Rowell, 180 Mo. App. 421, 425, 167 S. W. 1172: "Under the facts of this case, before plaintiff can recover of defendant the commission Wolfe (Warren) agreed to pay, he must show that Wolfe (Warren) cannot be held liable therefor and that defendant's act caused such nonliability." It is there held that because the vendor, Wolfe there and Warren here, is liable to the broker for the reasons above stated, it cannot be said that Coyne's refusal has caused plaintiff to lose anything. Coyne has not, by his refusal to carry it out after making a valid contract, destroyed or impaired plaintiff's right to sue and recover from Warren. Plaintiff has not been damaged

by Coyne's act of refusal and there is no cause of action against him.

The same would be true of Coyne's act in conspiring with and aiding or inducing Warren to refuse to carry out his contract. That would in nowise change Warren's liability or lose Coyne anything.

Nor would it be different as to Coyne, or make him liable for his refusal, if there is no valid contract for purchase of the land enforceable by Warren against him. That showing would merely disclose that plaintiff had not procured a purchaser *willing* to buy. A prospective purchaser has a right to abandon the purchase without liability, at any time before he makes a binding contract and he is not a willing purchaser, within the meaning of the law, unless he is willing to the extent of consummating the sale or to make a binding contract to do so. "Upon what theory can plaintiff claim damages against defendant for causing plaintiff to lose his pay for service rendered Wolfe (Warren) unless defendant did some wrongful act which prevented plaintiff from recovering from Wolfe (Warren). If the contract plaintiff obtained was no contract, how was defendant's refusal to perform it a wrongful act for which he could be held liable in damages?" [Bird v. Rowell, supra, 1. c. 429.]

Under no theory, therefore, can defendant Coyne be held liable and his demurrer was properly sustained.