## A. J. HOWARD, Appellant, v. J. F. WILSON, Respondent.

Springfield Court of Appeals, April 2, 1917.

1. **CONVERSION: Petition: When Allegations Insufficient.** Petition's allegations with prayer for actual and exemplary damages examined and *held* not sufficient to state cause of action in conversion.

2. **PLEADING: Petition: Prayer: Relation.** Though the prayer is no part of a petition since the petition may state a cause of action although the plaintiff may have mistaken his remedy in the prayer, yet in arriving at the character of plaintiff's cause of action it is often helpful to notice the prayer.

3. ————: **Uniting Causes of Action: Pleaded Separately: Statute.** Under section 1795, R. S. 1909, certain causes of action may be united in the same petition but they must be separately stated, with the relief sought for each. in such manner that they may be intelligibly distinguished.

4. **CRIMINAL LAW: Libel: What Constitutes Publication.** One who delivers libellous matter to the party libelled is guilty of criminal libel and punishable as for a misdemeanor. (Sec. 4820, R. S. 1909).

5. **LIBEL AND SLANDER: What Constitutes Publication in Civil Action.** But sec. 4820, R. S. 1909, does not change the rule as to libel in civil actions and it is necessary to constitute a publication of libellous matter in a civil action that such matter must come to the attention of some one other than the principals.

6. ————: **Basis for Civil Action.** Injury to one's reputation is the foundation on which civil actions for libel are based and where the perpetrator of the wrong from a moral or ethical standpoint fails to injure that reputation by not publishing the libel, it is *damnum absque injuria.*

7. ————: **Petition: Sufficiency Under Statute.** In action for libel it is not necessary to state in the petition any extrinsic facts but it is sufficient to state generally that the same were published concerning the plaintiff. (Citing Sec. 1837, R. S. 1909.)

8. ————: ————: **Examination of.** Petition in an action for libel examined and considered sufficient as against a demurrer. (Citing Sec. 1837, R. S. 1909.)

Appeal from Greene County Circuit Court, Division Number Two.—*Hon. Arch A. Johnson,* Judge.

REVERSED AND REMANDED.

*Oscar B. Elam* for appellant.

*Patterson & Patterson* for respondent.

FARRINGTON, J.—The defendant prevailed below, the circuit court having first sustained a motion to strike out a portion of plaintiff's petition and then sustained a general demurrer thereto. The petition is as follows: (Formal parts omitted.)

"Plaintiff states that he is and at all times herein mentioned was engaged in the banking business at Billings, Missouri, and also engaged in farming and stock raising and handling fine stock and that he was and now is owner of a certain bull calf which defendant desired to buy from plaintiff and which defendant priced to defendant and offered to sell to defendant for the price and sum of $100.

"Plaintiff further states that the said calf was on a farm of the plaintiff's some miles distant from Billings, the home and place of residence of the plaintiff and whereat plaintiff was the cashier of the Bank of Billings, there located, and that plaintiff had a man at the said farm in charge of the said calf, all of which said facts were fully known to defendant.

"Plaintiff further states that thereafterwards defendant wilfully, wantonly and without just case or excuse, acting by and through his son John as his agent and servant in the matter, called at the said farm in the absence of the plaintiff and obtained possession and control of the said calf from the said custodian thereof, and has ever since retained possession and control of said calf and has wholly excluded plaintiff from possession and control thereof.

"Plaintiff further states that thereafterwards defendant sent to plaintiff a check for $85, endeavoring to purchase the said calf for $85, and thereafterwards plaintiff, seeking to obtain a friendly settlement of the said differences between plaintiff and defendant, made an agreement whereby he was to meet the said John, the said son, agent and servant of the defendant, at the said farm

from whence the said calf had been unlawfully taken as aforesaid and to confer with said John with a view to a friendly settlement for the said calf.

"Plaintiff further states that plaintiff journeyed to the said farm at the said appointed time and that neither defendant, the said John or any other person met plaintiff at the said farm or elsewhere on behalf of defendant, and that thereafterwards with the purpose, effect and result of provoking the plaintiff to wrath, exposing plaintiff to public hatred, contempt and ridicule and causing plaintiff much humiliation and thereby purposing to deprive plaintiff of the benefit, confidence and of social intercourse and to injure plaintiff in his good name, fame, credit and standing and injure plaintiff in his said business, defendant uttered and published and caused and procured to be delivered to plaintiff along with another check for $10 a certain writing wherein and whereby defendant intended to falsely charge and did falsely charge plaintiff with dishonesty, which said writing is, to-wit:

'Springfield, Mo. Feb. 15, 1915.
'Mr. Howard

'Inclosed find check for ten dollars to satisfy you as I did not see anything but graft in this matter I did not let John go to your farm Sunday.

'J. F. WILSON.'

*"And thereafter plaintiff returned to defendant his said checks and demanded a return of the said bull calf, which said demand has at all times been by defendant ignored.*

"Wherefore plaintiff asks for judgment against the defendant for his actual damages $1000 and for exemplary damages $6500, and for his costs herein laid out and expended." (Italics are ours.)

The paragraph which we have written in italics is the part of the petition stricken out.

Appellant now contends that the court erred in sustaining the demurrer to the petition for the reason that this petition contains not only a count in conversion, but charges defendant with having libeled plaintiff as well.

We will dispose of the first contention by stating that there is no count for conversion in the petition. All that is said that is now claimed to state a case of conversion was merely matter of inducement leading up to the charge of libel. The only prayer is for $1000 actual damages and $6500 exemplary damages, and this certainly was not a prayer consistent with a cause of action for the taking of a bull calf alleged to be worth $100; and though the prayer has been held to be no part of the petition in that the court may very properly hold that a petition states a cause of action although the plaintiff may have mistaken his remedy in the prayer, yet in arriving at the character of the plaintiff's cause of action it is often helpful to notice the prayer. It is said in Rush v. Brown, 101 Mo. l. c. 592, 14 S. W. 736: "Parties who wish to change or enlarge their demand for relief should do so by amendment or otherwise while the cause is before the trial court, at least in those instances where the case goes off upon demurrer, for the general provision permitting the court to grant 'any relief consistent with the case made by the plaintiff and embraced within the issues' (Revised Statutes 1889, sec. 2216) can have no proper application where final judgment for defendant has been reached on demurrer. In that event the prayer for general relief, supplemental to one for specific performance, cannot, in view of section 2039 (Revised Statutes 1889), be construed as a prayer for a money judgment." [See also, Pemberton v. Johnson, 46 Mo. l. c. 344; Frye v. Warren, 190 Mo. App. 192, 176 S. W. 289.] On turning to section 1795, Revised Statutes 1909, dealing with causes of action that may be united in the petition, we find that the latter part provides that the causes of action "must be separately stated, with the relief sought for each cause of action, in such manner that they may be intelligibly distinguished." The petition in this case clearly fails to comply with this mandate of the law. [See Pomeroy's Code Remedies (4 Ed.), pp. 450, 451, 452.] We hold that no defendant on reading the petition in this case would be apprised of the fact

that he would be expected in this suit to account for having unlawfully converted plaintiff's bull calf.

Appellant's other contention is a more serious one. The cause of action stated in this petition, if any, is based on the fact that the defendant delivered or caused to be delivered to the plaintiff a letter containing libelous matter and the whole question turns on whether there is an allegation that there was a publication of this libelous matter. Both plaintiff and defendant admit that in an action for libel there must have been a publication of the libelous matter.

Defendant claims that the mere delivery of such a letter to the plaintiff fails to make a publication thereof sufficient to support a civil action for damages.

The plaintiff contends that under our statutes relating to libel it is a publication to deliver such a letter to the plaintiff and that it is not necessary to allege that such libelous matter was by the defendant shown or published to some third person, citing section 4817, 4818, 4819 and 4820, Revised Statutes 1909. All of these sections, it will be noted, are contained in an article and chapter pertaining to crimes and punishments. Section 4817 refers solely to slander, and specifically provides that the slanderous words must have been spoken in the presence and hearing of some person or persons other than the principals. Section 4818 defines libel as a malicious defamation of a person made public by any writing, etc. Section 4819 makes the offense of libel a misdemeanor. Section 4820 is as follows: "*Libel, continued*—No printing, writing, or other thing is a libel unless there has been a publication thereof, by delivering, selling, reading or otherwise communicating the same or causing the same to be delivered, sold, read or otherwise communicated to one or more persons or to the party libeled, or by exposing or exhibiting such libelous thing or matter in some public place, or where it may be seen or observed by the public." It will be noted that this section makes the delivery of libelous matter to the party libeled a publication. It therefore is undoubtedly the law in this State that one

who delivers libelous matter to the party libeled is guilty of criminal libel and punishable as for a misdemeanor.

The plaintiff argues that if this is a sufficient publication for a criminal offense it is a sufficient publication on which can be founded a civil liability, and is not without some authority to support him. He cites one case, that of Houston v. Woolley, 37 Mo. App. 15. On reading that opinion it will be found that the petition not only charges that the defendant delivered to the plaintiff the libelous letter but that he, the defendant, also published the letter to others, and of course the charge of committing the latter act would be clearly a charge of a publication of the libel. The court, however (page 24), holds that under section 1593, Revised Statutes 1879, (now sec. 4820), a civil action for libel may be maintained in this State on such publication.

We have found on investigation that the question has been once since that time passed on—in the case of Wright v. Great Northern Ry. Co., Mo. App., 186 S. W. 1085, where a letter containing libelous matter was sent to the plaintiff's agent and wherein the respondent urged that the publication to plaintiff's agent is tantamount to a publication to plaintiff himself, and that the petition was demurrable on this ground. The court in that case said that that contention was based on the common-law rule respecting publication and cited section 4820, Revised Statutes 1909, as a change of the common-law rule.

We cannot agree with the holding in either of those cases. As to the Houston case, the court we think was clearly right in holding that there was actionable libel under the charge that the letter was shown by the defendant to others, but the ruling that delivering the letter to the person libeled was a publication was going farther than the court was required to go to reach the result that it did. In the Wright case, the publication of the libel might well have been based on the ground that it was shown to the agent of the party libeled who was a third person; that is, we know of no such relation of agency existing as being *an agent to receive a libel*. A number of decisions may be found in the books holding that the

dictation of a libel to a private stenographer of the dictator is a publication of the libelous matter. [See Gambrill v. Schooley, —Md. App.,—48 Atl. 730.] The two decisions in Missouri, above referred to, in our judgment have gone astray in holding that the criminal statute cited (now sec. 4820) changed the common-law rule as to civil actions for libel.

There are numerous cases in other States holding that the rule as to libel in criminal cases does not change the rule as to libel in civil actions, and the textbooks support such decisions.

One reason why the Statute forbids the delivery of libelous matter to the party libeled and makes that a publication so as to be a misdemeanor is that such an act is likely to excite anger and bring on breaches of the peace. The effect would doubtless be the same on the person libeled whether it was known by others or not, but the civil action for libel is based on the damage one sustains to his reputation, and as reputation is what others may think of you, there can be no damage to the reputation where the libelous matter is not conveyed to others. It might be argued from a standpoint of psychology that the receipt of a libelous letter will hurt one's feelings and cause mental pain, yet we know of no cases in the law of torts where damages are given for mental anguish, humiliation, excitement or fear unless such effects are accompanied by an injury to one's person or personal rights or property rights, or where the wrong was inflicted by malice, insult or inhumanity. [Grayson v. St. Louis T. Co., 100 Mo. App. l. c. 71, 72, 71 S. W. 730, and cases cited.] Injury to one's reputation is the foundation on which civil actions for libel are based, and where the perpetrator of the wrong from a moral or ethical standpoint fails to injure that reputation by not publishing the libel, it is *damnum absque injuria.*

The case of Warnock v. Mitchell, 43 Fed. 428, deals with the identical question we have before us and holds that in Tennessee where there was a statute similar to (yet to our minds stronger in declaring what is a publication than) our section 4820, the criminal statute does

not change the rule in civil actions. A great number of cases both from England and this country are cited and discussed in that opinion and the decision appeals to us as being sound. The following authorities are in line with it: Yousling v. Dare (Iowa), 98 N. W. 371; Spaits v. Poundstone, 87 Ind. 522; Rumney v. Worthley (Mass.), 71 N. E. 316; Fry v. McCord (Tenn.), 33 S. W. 568; Gambrill v. Schooley,—Md. App.,—48 Atl. 730; Sicard v. Roca (La.), 9 So. 629; Fonville v. McNease (S. C.), 31 Am. Dec. 556; see also, State of Connecticut v. Avery, 7 Conn. 266, 18 Am. Dec. 105; 1 Cooley on Torts (3 Ed.), chap. VII, p. 366; Newell on Slander and Libel (2 Ed.), chap. XII, pp. 227, 237; Id. (3 Ed.), chap. XII, pp. 288, 292-294; 25 Cyc. (dealing with actionable libel), p. 365; Id. (dealing with criminal libel) p. 570.

In the case of Rolland v. Batchelder (Va.), 5 S. E. 695, a civil action for libel was upheld where the communication containing libelous matter was delivered only to the party libeled. However, that opinion is based on a special statute of Virginia, called attention to in the opinion, wherein it is provided that all words, which from their usual construction and common acceptation are construed as insults, and tend to violence and breach of the peace, shall be actionable.

We therefore hold that section 4820, Revised Statutes 1909, making the delivery of libelous matter to the party libeled a publication thereof for the purpose of conviction in a criminal case has not changed the common-law rule governing actions in tort for libel which requires that in order to be a publication the libelous matter must be made known or come to the attention of some one other than the principals, and rule this contention against appellant.

We must, however, hold that appellant is correct in his assertion that the petition on its face, as against a general demurrer, contains a sufficient allegation of publication. Turning to the petition, we find that he alleges, in this connection, the following: "defendant uttered and published and caused and procured to be delivered to plaintiff . . . a certain writing wherein and whereby

defendant intended to falsely charge and did falsely charge plaintiff with dishonesty." Section 1837, Revised Statutes 1909 (not referred to in the briefs), provides that in actions for libel it shall not be necessary to state in the petition any extrinsic facts "but it shall be sufficient to state, generally, that the same was published . . . concerning the plaintiff." The petition before us is sufficient to comply with this provision of the statute, and under the allegation in this petition the plaintiff would be permitted to make his proof concerning the person or persons to whom the libel was published. The identical point here was passed on at an early date in this State in the case of Atwinger v. Fellner, 46 Mo. 275, followed in Johnson v. Bush, 186 Mo. 107, 171 S. W. 636, and in the recent decision of our Supreme Court in Anderson v. Shockley, 181 S. W. 1151. In the case last cited it is held that the plaintiff in an action for libel on a motion to make the petition more definite and certain may be required to set forth when and where and to whom the alleged defamatory words were published; so that we could not go farther than to hold that a motion to make the petition more definite and certain should be sustained, and must therefore rule that this petition, as against a general demurrer, sufficiently alleges a publication. We hold that the court erred in sustaining the general demurrer and reverse the judgment and remand the cause. And in view of the fact that the case is in this condition it will not be necessary on this appeal to certify the cause to the Supreme Court on account of the difference of opinion existing between this court and the Kansas City and St. Louis Courts of Appeal on the question, hereinbefore discussed, that the criminal statute on libel changed the common-law rule as to publication in civil actions for libel. *Cox, P. J.,* and *Sturgis, J.,* concur.